**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TRACEY GAINER | CRIMINAL ACTION<br>NO. 19-627 |

**Pappert, J.** **August 15, 2024**

**MEMORANDUM**

Tracey Gainer pleaded guilty to a five-count indictment charging her with drug and gun related crimes. Based on prior drug convictions, Gainer was classified a "career offender" under U.S.S.G. § 4B1.1, resulting in an advisory guideline range of 262 to 327 months' incarceration. In February of 2023, the Court sentenced Gainer to 180 months. She did not appeal.

Gainer later filed a *pro se* motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255, bringing two ineffective assistance of counsel claims. Chief among them, Gainer contends she asked her lawyer to appeal her conviction and sentence, but counsel refused to do so. Based on her allegations, the Court appointed Gainer counsel and held an evidentiary hearing on her motion on August 5, 2024. (ECF No. 86). After evaluating the hearing testimony and considering all filings and arguments, the Court denies the motion.

# I

## A

In October 2019, a grand jury returned a five-count indictment against Gainer charging her with: possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1); possession with intent to distribute a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); possession with intent to distribute twenty-eight grams or more of a mixture and substance containing a detectable amount of cocaine base and a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), (b)(1)(C); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). (Gov't Response, pp. 4–5, ECF No. 65). On October 23, 2019, Kathleen Gaughan, an experienced Assistant Federal Defender with the Federal Community Defender Office, entered her appearance as counsel for Gainer. (ECF No. 5).

With Gaughan representing her, Gainer pleaded guilty, pursuant to a written Guilty Plea Agreement, to all five counts on May 6, 2022. (ECF Nos. 40, 41). Her Agreement contained, *inter alia*, a broad appellate waiver whereby Gainer agreed she would not "raise on appeal or on collateral review any argument that (1) the statutes to which [Gainer] is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes." (Guilty Plea Agreement, ECF No. 41, ¶¶ 15–16). Gainer retained the right to raise a claim that her attorney provided ineffective assistance of counsel and to appeal the Court's determination at sentencing that she was a career offender under U.S.S.G. § 4B1.1. (*Id.*) That determination was based on

Gainer having three prior convictions for drug distribution offenses, which occurred in 2003 and 2005. *See* (PSR ¶¶ 36–43); (Gov't Response, pp. 9–10, 40–43, ECF No. 65). With the career offender enhancement, Gainer's guideline range was 262-327 months; without it, it likely would have been 170 to 197 months. *See* (Aug. 5, 2024 Hr'g Tr. 16:10–12, ECF No. 87).

On February 28, 2023, the Court, balancing the 18 U.S.C. § 3553(a) factors, varied downward significantly from the advisory guideline range and sentenced Gainer to 180 months' imprisonment. (Sentencing Hr'g Tr. 39:9–49:17, ECF No. 80). Both in her sentencing memorandum and at the sentencing hearing, Gaughan objected to the career offender enhancement, preserving it for further review while acknowledging that a then-recent Third Circuit decision, *United States v. Lewis*, 58 F.4th 764 (3d Cir. 2023), foreclosed the basis for her challenge. *See* (Sentencing Hr'g Tr. 8:24–25); (ECF No. 50, p. 1). Consistent with the Guilty Plea Agreement, the Government moved to dismiss its notice under 21 U.S.C. § 851, which would have increased Gainer's sentencing exposure. (Sentencing Hr'g Tr. 39:3–6).

On December 26, 2023, Gainer filed her *pro se* § 2255 motion. (ECF No. 60). Gainer first claims that Gaughan was ineffective for failing to raise during Gainer's plea negotiations, plea hearing and prior to and during her sentencing, arguments pursuant to *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), and *Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023), *cert. granted, judgment vacated sub nom. Garland v. Range*, No. 23-374, 2024 WL 3259661 (U.S. July 2, 2024), that 18 U.S.C. § 922(g)(1) is unconstitutional. She also contends she requested Gaughan "preserve" the issue prior to her Guilty Plea Agreement and raise it at sentencing and

on direct appeal. Second, Gainer alleges that she asked Gaughan to appeal her designation as a career offender under § 4B1.1. (ECF No. 60, pp. 1–5). Based on those allegations, specifically, that Gainer asked Gaughan to appeal and Gaughan allegedly refused to do so, the Court appointed Gainer counsel, allowed her to file a counseled, supplemental brief and scheduled an evidentiary hearing. (ECF Nos. 72, 82, 83).

B

At the August 5, 2024 hearing, the Court heard testimony from Gainer, Gainer's "godbrother,"[1] Terrelle Murray, and Gaughan.

Gainer testified that she tried calling Gaughan the "whole week" after she was sentenced. (Aug. 5, 2024 Hr'g Tr. 56:22–24). Roughly a week after the sentencing, Gainer claimed the two spoke on the telephone. Gainer said she told Gaughan during that conversation that she wished to appeal, but that Gaughan told her, "Tracey, your Judge sentenced you . . . under the guidelines, and there's no appeal[.]" (*Id.* at 57:2–12). Gainer testified she then asked Gaughan if there was anything else she could do and Gaughan said "no." With no more questions, Gainer hung up and did not again contact Gaughan about an appeal. (*Id.* at 57:21–25, 65:11–16).

Murray testified that in the moments following Gainer's sentencing, Gaughan told Gainer's supporters that they could "[meet up] outside to discuss everything." (*Id.* at 34:10–13). According to Murray, this meeting, which apparently occurred in the courthouse lobby, did not last long, as Gaughan allegedly "rush[ed]" him off. (*Id.* at 33:11–34:7). In any event, Gaughan gave Murray her card and told him they were

[1] Murray explained that his mother is Gainer's godmother. (Aug. 5, 2024 Hr'g Tr. 48:13–15).

going to have a follow-up conversation to "go over strategies about getting some of her time cut down." (*Id*. at 33:5–10, 40:8–9). Murray says he made "numerous efforts" to contact Gaughan, but never reached her. (*Id.* at 34:23–35:7). Murray did not know who answered the phone at the Federal Community Defender Office but says they "kept giving [him] the same line" every time: Gaughan was either in a meeting with a client or she would get back to him. (*Id.* at 40:24–41:1). Though Murray said Gainer told him she wanted to appeal, Murray acknowledged he never told Gaughan or anyone at her office that Gainer wished to do so. (*Id.* at 41:13–17, 44:24–45:3). Nor did he send Gaughan an email or letter on that or any other topic. (*Id.* at 43:7–15).

Gaughan's testimony of material events differed from Gainer and Murray's. With the caveat that her recollection was not perfect given the passage of time, Gaughan remembered speaking with Gainer and her family and supporters immediately after the sentencing, but did not know exactly what they spoke about. (*Id.* at 9:20–22, 20:9–14). Gaughan recalled Gainer being "very upset" about the sentence, but did not remember Gainer asking her to appeal, nor did her file contain any notes or other indicia that Gainer made such a request. (*Id.* at 12:6–8, 21:2–4, 22:1–4).

Moreover, Gaughan has "represented many people" and "appealed many cases" and she described her practice when a client asks her to appeal: she submits the appeal request to her legal assistant and the case goes to the appellate division in the Federal Community Defender Office. (*Id.* at 27:2–10). She added that if Gainer had asked her to appeal, Gaughan's "normal course of action" would be to do so, as "[e]very client has an absolute right to appeal . . . whether [Gaughan] think[s] it's meritorious or not."

Gaughan emphasized that she would never tell a client, "[Y]ou have no merit to an appeal." (*Id.* at 21:4–6, 26:20–24).

II

28 U.S.C. § 2255 permits a prisoner sentenced by a federal court to "move the court which imposed the sentence to vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a). The petitioner bears the burden of proving that her conviction is illegal. *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). If the Court determines that the sentence was not authorized by law, was unconstitutional, or is otherwise open to collateral attack, it may vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate. 28 U.S.C. § 2255(b).

The Court must hold an evidentiary hearing for a § 2255 petition unless the motion, case filings and record conclusively show the prisoner is not entitled to relief. *Id*. It is the Court's role to judge the credibility of the witnesses in an evidentiary hearing held on a § 2255 motion. *Mondelice v. United States*, No. 15-295, 2021 WL 808755, at *9 (M.D. Pa. Mar. 3, 2021) (citing *United States v. Purcell*, 667 F. Supp. 2d 498, 514 (E.D. Pa. 2009)).

III

The two-part test from *Strickland v. Washington* governs ineffective assistance of counsel claims. 466 U.S. 668, 669 (1984). The defendant must first prove that

"counsel's performance was deficient," meaning, that it falls "below an objective standard of reasonableness." *Id.* at 687–88. The defendant then must show "that the deficient performance prejudiced the defense." *Id.* at 687. The prejudice prong typically requires showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. However, "[t]he exact contours of that analysis . . . depend on the type of 'proceeding' at issue." *United States v. Clancy*, No. 17-00031, 2021 WL 6037583, at *4 (W.D. Pa. Dec. 21, 2021), *aff'd*, 2022 WL 17038704 (3d Cir. Nov. 17, 2022).

IV

In her first claim, Gainer contends that she asked counsel, based on the United States Supreme Court's *Bruen* decision and the Third Circuit Court of Appeals' subsequent holding in *Range*, to argue 18 U.S.C. § 922(g)(1) was unconstitutional during plea negotiations, at the plea hearing, prior to and during sentencing, and on direct appeal. (ECF No. 60, p. 4). This claim, however, did not rise to the level of an afterthought at the hearing. Aside from a cryptic exchange with counsel about caselaw regarding "drugs and guns" she regularly receives from lawyers via email at the FDC, (Aug. 5, 2024 Hr'g Tr. 52:12–53:14), Gainer made no mention of it.

And for good reason—the allegation is verifiably false, impugning the veracity of Gainer's motion right off the bat. Gainer signed her plea agreement on April 25, 2022, and pleaded guilty on May 6, 2022, about a month and a half before the United States Supreme Court decided *Bruen* and more than a year prior to the Third Circuit's *en banc Range* decision. *Compare* (ECF Nos. 40, 41), *with Bruen*, 597 U.S. at 1 (decided June 23, 2022), *and Range*, 69 F.4th at 96 (decided June 6, 2023). Counsel cannot be

ineffective for failing to raise a challenge pursuant to a case not yet decided.[2] *See United States v. Colon*, No. 09-0155, 2015 WL 127726, at *4 (E.D. Pa. Jan. 6, 2015).

Gainer's claim is also undercut by her sworn statements during the change of plea hearing and at sentencing. During her change of plea colloquy, Gainer said she discussed her case and the Guilty Plea Agreement with Gaughan, was satisfied with her representation and had no further questions. (Change of Plea Hr'g 10:17–16:25, ECF No. 68). The Court then went over the elements of the § 922(g)(1) charge, and again, Gainer had no questions or objections. (*Id.* at 24:23–25:13). And at the end of the hearing, Gainer declined to speak when the Court asked if there was anything else she wanted to say. (*Id.* at 38:13–17). At sentencing, Gainer confirmed she read the Presentence Investigation Report with Gaughan, discussed it with her and had no further questions or objections. (Sentencing Hr'g 6:10–7:20).

Regardless, "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). If Gaughan had attempted to argue the statute's unconstitutionality at any stage of Gainer's case, it would have been meritless given Gainer's criminal history. Many courts in the Third Circuit have found there is

---

[2] Gainer was sentenced on February 28, 2023, and the Third Circuit decided *Range en banc* on June 6, 2023. (ECF No. 51). *Bruen*, a facial challenge to a state licensing regime, would not reasonably have suggested to Gaughan that Gainer had a meritorious defense to her § 922(g)(1) charge; *Bruen* did not address the constitutionality of § 922(g)(1), and numerous Justices, either in concurring or dissenting opinions, "signaled their understanding that the majority opinion in *Bruen* did not call into question the constitutionality [of § 922(g)(1)]." *United States v. Canales*, No. 21-226, 2023 WL 8092078, at *3 (E.D. Pa. Nov. 20, 2023). *See also Bruen*, 597 U.S. at 72 (Alito, J., concurring) (noting *Bruen* does not "disturb[ ] anything that [the Court] said in *Heller* or [*McDonald v. Chicago*] . . . about restrictions that may be imposed on the possession or carrying of guns"); *see id.* at 80–81 (Kavanaugh, J., concurring, joined by Roberts, C.J.) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations.").

historical precedent for disarming convicted drug dealers "given the strong and established connection between drug trafficking and violence."[3] *United States v. Thrones*, No. 24-042-1, 2024 WL 3204457, at *5 (E.D. Pa. June 25, 2024) (collecting cases). *See also United States v. Slone*, No. 16-400, 2024 WL 3568571 (E.D. Pa. July 29, 2024); *United States v. Blackshear*, No. 23-159, 2023 WL 5985284 (E.D. Pa. Sept. 14, 2023); *United States v. Irizarry*, No. 21-202, 2023 WL 6406278 (E.D. Pa. Oct. 2, 2023). And since the Court rejects Gainer's as-applied challenge, her facial challenge, to the extent she brought one, would also fail, as she cannot "establish that no set of circumstances exists under which the Act would be valid." *United States v. Moore*, No. 23-1843, 2024 WL 3629416, at *6 n.5 (3d Cir. Aug. 2, 2024) (precedential) (quoting *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024)). As such, Gaughan was neither deficient nor was Gainer prejudiced by the failure to raise a constitutional challenge to the § 922(g)(1) charge.[4]

---

[3] The Government agrees Gainer is one of "the people" protected by the Second Amendment. (ECF No. 65, at 65). However, the Government also argues that the Second Amendment did not cover Gainer's conduct, as she did not maintain she possessed the gun for a lawful purpose and possessed the gun while serving a criminal sentence. (ECF No. 65, pp. 24–27).

Gainer committed the instant offense while on parole, (PSR ¶ 51), and courts in this circuit have held that individuals are not engaged in protected Second Amendment conduct when they possess guns while on parole. *See United States v. Birry*, No. 23-288, 2024 WL 3540989, at *6 (M.D. Pa. July 25, 2024). The Third Circuit has also recently held that a convict completing his sentence on supervised release did not have a Second Amendment right to possess a firearm. *United States v. Moore*, No. 23-1843, 2024 WL 3629416 (3d Cir. Aug. 2, 2024) (precedential).

[4] Since Gainer filed her motion, the United States Supreme Court decided *United States v. Rahimi*, 144 S. Ct. 1889 (2024), granted certiorari in *Range*, vacated the judgment and remanded the case to the Third Circuit for reconsideration in light of *Rahimi*. *Garland v. Range*, No. 23-374, 2024 WL 3259661, at *1 (U.S. July 2, 2024). Despite *Range*'s uncertain future, courts in this circuit have found, before and after *Rahimi*, that § 922(g)(1) does not violate the Second Amendment when the defendant, like Gainer, has multiple state drug convictions. *See United States v. Slone*, No. 16-400, 2024 WL 3568571, at *3 (E.D. Pa. July 29, 2024).

V

Gainer next contends that Gaughan was ineffective for failing to appeal her career offender designation.[5] When the basis for a petitioner's ineffective assistance of counsel claim is a failure to appeal, "a more specific version of the *Strickland* standard" applies. *Smith v. Warden Baylor Women's Corr. Inst.*, No. 21-1880, 2024 WL 808971, at *6 (3d Cir. Feb. 27, 2024) (citing *Harrington v. Gillis*, 456 F.3d 118, 125 (3d Cir. 2006)). In considering whether counsel performed deficiently by not filing a notice of appeal, the Court must first ask "whether counsel in fact consulted with the defendant about an appeal." *Id.* (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000)). If counsel did so, then counsel performed in a "professionally unreasonable manner if [counsel] failed to follow the defendant's express instructions with respect to the appeal." *Id.*

If counsel did not consult with the defendant, the Court must examine whether that failure to consult constitutes deficient performance. *Id.* Counsel has a duty to consult with a defendant about an appeal when there is reason to think "(1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that [she] was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. In such circumstances, a defendant shows prejudice by demonstrating "that there is a reasonable probability that, but for counsel's deficient failure to consult with [her] about an appeal, [she] would have timely appealed." *Id.* at 484. "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant . . . expressed a desire to appeal" is often "highly relevant" to showing that counsel

[5] At the evidentiary hearing, Gainer's counsel contended that Gainer's first claim also "fall[s] under the umbrella of whether or not an appeal should be reinstated." (Aug. 5, 2024 Hr'g Tr. 68:15–20).

performed deficiently, and that the defendant was prejudiced. *Id.* at 485–86. A defendant is not required to show the appeal would have had merit. *Id.*

A

Gainer testified that she asked Gaughan to appeal about a week after her sentencing, but that Gaughan's "exact words" in response to that request were, "Tracey, your Judge sentenced you . . . under the guidelines, and there's no appeal[.]" (Aug. 5, 2024 Hr'g Tr. 57:9–12). Gaughan, again, could not recall Gainer asking her to appeal, nor did she have any notes in Gainer's file corroborating Gainer's version of events.[6] (*Id.* at 22:1–4). Gaughan knows full well that every client has the right to appeal, and she would "never" tell a client there is "no merit to an appeal." (*Id.* at 26:11–25). Gaughan has appealed many cases, and when a client asks her to appeal, she said she always does so. (*Id.* at 27:2–10).

Gaughan was credible in all respects; Gainer was not. Gaughan has appeared before this Court many times. She is a formidable member of the criminal defense bar. (*Id.* at 4:8–25). Considering her extensive experience, it is inconceivable she told Gainer there was no basis for an appeal because she received a below guideline sentence. First of all, Gaughan knows that is an incorrect statement of the law. And she stated the obvious—the client always has the right to appeal, whether or not counsel believes an appeal is meritorious. (*Id.* at 26:20–22).

More to the point, while Gaughan may not have recalled specifically what Gainer did or did not say, her description of what she would do if a client did wish to appeal

---

6 While Gaughan had no notes of Gainer asking to appeal, she did have records of Gainer's other requests, such as an October 25, 2023 letter to Gainer sending her a copy of her Plea Agreement and docket sheet. (Aug. 5, 2024 Hr'g Tr. 11:1–6).

undermines further Gainer's allegation. Attorneys can testify as to their usual practices when the passage of time inhibits their ability to recall the details of a particular case. *Eberhardt v. Wenerowicz*, No. 13-1700, 2015 WL 12602759, at *7 n.10 (E.D. Pa. June 22, 2015); *Greiner v. Wells*, 417 F.3d 305, 326 (2d Cir. 2005) ("Time inevitably fogs the memory of busy attorneys. That inevitability does not reverse the *Strickland* presumption of effective performance."). Plus, the Federal Rules of Evidence allow habit evidence to prove "that on a particular occasion the person . . . acted in accordance with the habit or routine practice," Fed. R. Evid. 406, and courts have relied on habit evidence in *habeas* proceedings to find effective assistance of counsel. *Carrion v. Smith*, 549 F.3d 583, 590 (2d Cir. 2008) (citing *United States v. Arredondo*, 349 F.3d 310, 315–16 (6th Cir. 2003)). Here, Gaughan testified that her general practice is to refer the appeal to her legal assistant, who transfers the case to the appellate division; she also said she would "never" tell a client there is "no merit to an appeal." (Aug. 5, 2024 Hr'g Tr. 26:11–25).

Gaughan is a credible, conscientious and experienced criminal defense attorney. The chances are nil that she told her client "there's no appeal" because the sentence was below the guideline range and then disregarded the law and her client's wishes.

B

1

Given that Gainer did not expressly ask Gaughan to appeal, the Court turns to whether Gaughan had a duty to consult with Gainer on the topic of an appeal. In making that determination, the Court looks at the totality of the circumstances and "take[s] into account all the information counsel knew or should have known." *Flores-*

*Ortega*, 528 U.S. at 480. A "highly relevant factor" in this determination is whether the conviction is the result of a guilty plea, "both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* Other considerations include whether the defendant received the sentence bargained for, whether the plea agreement waived the defendant's appellate rights, and the extent to which the Court advised the defendant of her appellate rights. *Id.* at 479–80.

*Flores-Ortega* refused to adopt a bright-line rule of consultation in all cases, though it predicted that in the "vast majority of cases," courts "evaluating the reasonableness of counsel's performance" would find that counsel had a duty to consult with the defendant about an appeal. *Id.* at 481. Nonetheless, *Flores-Ortega* pondered examples of when there would not be a duty to consult about an appeal:

> [S]uppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal . . . . Or, for example, suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide he need not repeat that information.

*Id.* at 479–80.

2

Given the totality of the circumstances, Gaughan did not have a duty to further consult with Gainer about appealing. First, there was no reason for Gaughan to believe a rational defendant in Gainer's position would have wanted to appeal given "all the information [she] knew or should have known" at the time. *Id.* at 480. Gainer pleaded

guilty, "a highly relevant factor," and although the written Guilty Plea Agreement did not call for an agreed-upon sentence, Gainer received a sentence well below her advisory guideline range and her Plea Agreement contained a broad appellate waiver. *See United States v. Clancy*, Nos. 22-1032, 22-1033, 2022 WL 17038704, at *2 (3d Cir. Nov. 17, 2022) (reasonable lawyer did not have reason to conclude that a rational defendant would want to appeal where, *inter alia*, the client received a sentence at the low end of the guidelines and his plea agreement had a broad appellate waiver).

Although Gainer's appellate waiver had a carveout for the career offender designation and Gaughan objected to the enhancement in both her sentencing memorandum and at sentencing, the basis for her challenge was foreclosed by *United States v. Lewis*, decided one month prior to Gainer's sentencing. 58 F.4th 764 (3d Cir. 2023). At the plea hearing, Gaughan indicated the career offender carveout was largely spurred by the challenges then being made in the Third Circuit regarding the predicates under the Controlled Substances Act. (Change of Plea Hr'g 14:11–15:20). Once *Lewis* held that a "controlled substance" within the definition of "controlled substance offense" is one regulated by *either* federal or state law, *Lewis*, 58 F.4th at 769, the "exact issue" in Gainer's case, (Sentencing Hr'g Tr. 8:10–25), an appeal on the career offender issue became frivolous.[7] *See Smith*, 2024 WL 808971, at *7 (noting that while a defendant need not show her appeal would have had merit, evidence of nonfrivolous grounds for

---

7 Had Gainer explicitly asked Gaugahn to appeal and Gaughan refused to do so, prejudice would have been presumed "with no further showing from [Gainer] of the merits of [her] underlying claims." *Garza v. Idaho*, 586 U.S. 232, 242 (2019) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000)). In assessing whether Gaughan performed deficiently for failing to consult with Gainer about an appeal, however, the information Gaughan knew at the time about the likely success of any claims is "critically important" to the Court's analysis. *United States v. Clancy*, No. 17-00031, 2021 WL 60337583, at *13 (W.D. Pa. Dec. 21, 2021), *aff'd*, 2022 WL 17038704 (3d Cir. Nov. 17, 2022).

appeal is often "highly relevant" in showing whether counsel performed deficiently). *See also* (Aug. 5, 2024 Hr'g Tr. 14:24–25) ("[D]id I think at that time, in light of the *Lewis* case, that we had success on appeal on that issue? No.").

Gaughan was also not required to "confirm[] the decision to forgo an appeal." *Clancy*, 2022 WL 17038704, at *2. Counsel need not consult a defendant about an appeal when "a sentencing court's instructions to a defendant about [her] appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult," as "counsel might then reasonably decide that [she] need not repeat that information." *Flores-Ortega*, 528 U.S. at 479. Here, the Court advised Gainer of her appellate rights at both her change of plea hearing and her sentencing. Gainer said she understood. (Change of Plea Hr'g 22:7–23:13); (Sentencing Hr'g Tr. 53:12–54:15). It was reasonable for Gaughan to conclude, given the Court's explicit instructions, that Gainer understood her appellate rights. *Flores-Ortega*, 528 U.S. at 479–80.

Nor is there any indication Gainer "reasonably demonstrated to counsel that [she] was interested in appealing." *Id*. at 480. As discussed *supra* subsection V.A, Gainer never asked Gaughan to appeal. To the extent Gainer told her godbrother, Murray, that she wished to appeal because she "wasn't really comfortable with 180 months," (Aug. 5, 2024 Hr'g Tr. 44:24–45:3, 55:1–5), Murray never communicated that to Gaughan. Though Murray said he called Gaughan numerous times, he never told anyone at the Federal Community Defender Office that Gainer wanted to appeal. (*Id.* at 70:13–16). He did not email Gaughan or send her a letter requesting an appeal. (*Id.* at 43:7–15). Rather, Murray only once said he was "calling in regard[] to a follow-up [he] was supposed to have with Ms. Gaughan about Tracey Gainer's sentencing." (*Id.*

at 42:24–43:4). Murray never put Gaughan on notice she should have further consulted with Gainer about an appeal, particularly given Gaughan's own interactions with Gainer after her sentencing, the fact that Gainer pleaded guilty, received a below guideline sentence and learned of her appellate rights directly from the Court.

VI

A § 2255 petitioner can appeal the denial of her claims only if she obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1). A district court cannot issue one unless the petitioner makes a substantial showing that her constitutional rights were denied. *Id.* § 2253(c)(2). To do so, she must demonstrate reasonable jurists would find the Court's evaluation of her constitutional claims wrong or debatable. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A certificate of appealability is not warranted here because reasonable jurists would not debate the Court's ruling, and Gainer has not made a substantial showing that her constitutional rights were violated.

An appropriate Order follows.[8]

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.

---

[8] In her reply, Gainer argues that counsel was also deficient because she failed to object to the sentencing enhancement for possession of a gun with an obliterated serial number. (ECF No. 67, p. 7). Gainer further alleges that she told counsel she was unaware of the obliterated serial number, and that the U.S.S.G. § 2k2.1 is unconstitutional because it does not have a *mens rea* requirement. (*Id.*) As an initial matter, Gaughan objected to the obliterated serial number enhancement in the PSR but noted her objection could be withdrawn based on her eventual observation of the gun. (PSR p. 27). At sentencing, Gaughan withdrew the objection. (Sentencing Hr'g Tr. 8:14–15). In any event, counsel is not deficient for failing to raise a meritless challenge, and it is well-established that § 2k2.1 is a strict liability enhancement and does not violate due process. *United States v. Black*, 386 F. App'x 238, 241–42 (3d Cir. 2010) (citing *United States v. Mobley*, 956 F.2d 450 (3d Cir. 1992)).